IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ELIJAH SIMS,                    :
AIS #231113                     :
                                :
    Plaintiff,                  :
                                :
vs.                             :   CIVIL ACTION 15-0485-KD-M
                                :
STATE OF ALABAMA, *et al.*,     :
                                :
    Defendants.                 :

## REPORT AND RECOMMENDATION

This § 1983 action, filed by Elijah Sims, an Alabama prison inmate, proceeding *pro se,* was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72, and is now before the Court on Plaintiff's Amended Complaint (doc. 10)[1], Defendant's Answer and Special Report (docs. 26, 27), which the Court has converted into a Motion for Summary Judgment (doc. 28), and Defendant's Response to the Motion for Summary Judgment (doc. 38). After consideration of the pleadings and Motion and for the reasons set out below, it is recommended that Defendant's Motion for Summary Judgment be granted and that Plaintiff's action be dismissed with prejudice.

---

[1] Plaintiff initially filed his Complaint (doc. 1) on September 30, 2015. Plaintiff was instructed to re-file his Complaint on the proper form (doc. 3) which he did on November 30, 2015 (doc. 7). Plaintiff, however, additionally, filed a Motion to Amend (doc. 6) which this Court granted (doc. 9). Therein, Plaintiff was informed that his Amended Complaint would supersede his previous Complaints and, as such, this Court will only consider Plaintiff's Amended Complaint for purposes of the pending Motion for Summary Judgment.

Facts and Proceedings

Plaintiff, Elijah Sims, is an inmate within the Alabama Department of Corrections ("ADOC") currently housed at Fountain Correctional Facility in Atmore, Alabama, where is he serving a fifteen (15) year sentence for first-degree burglary. (Doc. 10 at 1, 8). Defendants, Warden Wanda Lightner ("Lightner"), Correctional Sergeant Bernard Dees ("Dees"), Correctional Officer James Travis ("Travis"), Correctional Warden III Cynthia Stewart ("Stewart"), Correctional Sergeant Kenneth Tyus ("Tyus") and Correctional Captain Willie Knight ("Knight") are all employed with the ADOC. (Doc. 26 at 1-2).

On August 24, 2015, Plaintiff was serving as the van driver for the Mobile Community Based Center, when he was seen exiting a residence located at 398 Newsome Street in Prichard, Alabama by Correctional Sergeant Albert Randolph ("Randolph"). (Doc. 27 at 4; Doc. 27-9 at 2). Randolph notified Correctional Lieutenant Jeffery Jackson ("Jackson") of the incident and apprehended Plaintiff. (*Id.*) Correctional Officer Ahmad Moore ("Moore") and Defendant Knight went to the subject residence to assist Randolph and Jackson and reported the incident to Defendant Lightner. (Doc. 27 at 5; Doc. 27-9 at 2). Thereafter, Randolph, Moore, and Defendant Wright returned to the

Mobile Community Based Facility with Plaintiff and without incident. (*Id.*)

Following the August 24, 2015, incident, Plaintiff received three disciplinaries for (1) absconding from supervision, (2) possession of contraband, and (3) refusing to provide a urine sample. (*Id.*) Plaintiff was served with the disciplinary report for a Rule 935 violation (Absconding from Supervision) on August 25, 2015. (Doc. 36-1 at 2-4)[2]. Plaintiff refused to sign the notice, but identified individuals to call as witnesses. (*Id.*) On August 27, 2015, the disciplinary proceeding was held, after which Defendant Dees recommended that Plaintiff's charge be changed from a Rule 935 violation to a Rule 503 violation (Being in an Unauthorized Area) (Doc. 27 at 6; Doc. 27-1 at 1; Doc. 27-2 at 2). Thereafter, Defendant Lightner attempted to re-initiate a disciplinary for a violation of Rule 503. (Doc. 27 at 6; Doc. 27-5). A computer glitch, however, caused the disciplinary charge to

---

[2] Following the filing of the Special report, Plaintiff filed a Motion to Compel Discovery (doc. 33) pertaining to the disciplinary report for the first hearing of August 27, 2016. This Court ordered Defendants to produce any documents responsive to Plaintiff's motion that had not previously been produced. (Doc. 34). Thereafter, Defendants produced additional documents which had inadvertently not been produced and which contained this document. It was further explained in Defendants' Response (doc. 36) that there was no final report for the first disciplinary report because "the final version of that report was either not completed or overridden by the computer glitch that necessitated the re-initiation of those proceedings in the first place." (*Id.* at 2).

3

revert back to the previous violation of Rule 935. (Doc. 27 at 6; Doc. 27-1; Doc. 27-5).

On September 9, 2015, Plaintiff was served with a copy of the re-initiated disciplinary report which again indicated he was charged with a violation of Rule 935. (Doc. 27 at 5; Doc. 27-9 at 9). The report notified Plaintiff of the charge, the disciplinary hearing, Plaintiff's right to present an oral or written statement, and his ability to call witnesses. (*Id.*) Plaintiff refused to sign for the service of the report, but identified individuals to call as witnesses. (*Id.*)

On September 11, 2015, a disciplinary hearing for the incorrectly generated violation of Rule 935 was held. (Doc. 27 at 6). Plaintiff entered a plea of not guilty. (Doc. 27 at 6; Doc 27-9 at 6). At the hearing, Randolph testified that on August 24, 2015, he observed Plaintiff walking out of an unknown residence in an unauthorized area located at 938 Newsome Street in Prichard, Alabama, when the Plaintiff was supposed to be in route to pick up other inmates from work. (Doc. 27 at 6; Doc. 27-9 at 6). Plaintiff then testified that "the state van was parked in front of the residen[ce] with him in the van" and that he, "was not in that house." (Doc. 27 at 6; Doc. 27-9 at 7). Plaintiff was given an opportunity to submit questions to

the arresting officer and other witnesses. (*Id.*) The hearing officer, Defendant Travis, found Plaintiff guilty of violating Rule 935 and recommended punishment of 45 days of extra duty, forty-five days loss of outside, canteen, telephone, and visitation privileges, and recommended that Plaintiff undergo a custody review. (Doc. 27 at 6; Doc. 27-3 at 2; Doc. 27-9 at 7-8). However, the final disciplinary report was disapproved after the computer glitch was discovered and it was realized that the second disciplinary report had been initiated for the Rule 935 violation, resulting in a procedural violation. (Doc. 27 at 6-7; Doc. 27-1; Doc. 27-9 at 19). As a result, Plaintiff's disciplinary was dismissed and he was not punished for a Rule 935 violation. (Doc. 27 at 7; Doc 27-9 at 19; Ex. H at 3). On September 22, 2015, the Plaintiff was served with a copy of the disciplinary report showing that it had been disapproved and dismissed, but he again refused to sign. (Doc. 27 at 7; Doc. 27-9 at 19).

That same day, another disciplinary report was generated for Plaintiff for the August 24, 2015, incident for violating Rule 503. (Doc. 27 at 7; Doc. 27-9 at 20). Plaintiff was served with the new disciplinary report which, again, notified Plaintiff of charge, the disciplinary hearing, Plaintiff's right to present an oral

or written statement, and his ability to call witnesses. (*Id.*) Plaintiff did not sign for service of the report or identify any witnesses. (Doc. 27-9 at 20). On September 23, 2015, the disciplinary hearing was held and Plaintiff entered a plea of not guilty. (Doc 27 at 7; Doc. 27-4 at 1; Doc 27-9 at 34). Randolph again testified as to his involvement in the August 24th event (as set forth above). (Doc. 27-9 at 34). Plaintiff testified he was "[n]ot guilty, my due process was violated and I was not found guilty for rule violation 935 Absconding from supervision." (*Id.*) Plaintiff was also given the opportunity to submit questions to witnesses. (Doc. 27 at 7; Doc 27-4 at 2; Doc 27-9 at 34).

Based on the testimony of Sergeant Randolph, the hearing officer, Defendant Tyus, found Plaintiff guilty of violating Rule 503. (Doc. 27 at 8; Doc. 27-4 at 2; Doc 27-9 at 35). The hearing officer recommended that Plaintiff be punished with forty-five days loss of outside, canteen, telephone, and visitation privileges and recommended a custody review. (Doc. 27 at 7; Doc 27-9 at 35). Plaintiff did not lose any good time. (Doc. 27-9 at 35). On September 24, 2015, the disciplinary report was approved by Defendant Knight and Plaintiff was served with a completed copy of the final disciplinary report. (Doc. 27 at 7; Doc.

27-9 at 35). Plaintiff, again, refused to sign for service of the completed disciplinary report. (Doc. 27 at 7; Doc. 27-9 at 35).

On December 16, 2015, Plaintiff filed his Amended Complaint in this action against Defendants, Warden Wanda Lightner, Correctional Sergeant Bernard Dees, Correctional Officer James Travis, Correctional Warden III Cynthia Stewart, Correctional Sergeant Kenneth Tyus and Correctional Captain Willie Knight alleging that Defendants "knowingly and willingly conspired to violate the Plaintiff's 8th and 14th Amendment rights to be free from cruel and unusual punishment to not be subjected to the exact same punishment twice […] and violat[ed] Plaintiff's constitutional right to equal protection of the law." (Doc. 10 at 5). For relief, Plaintiff seeks to "[e]xpunge all disciplinarys [(sic)], incident reports pertaining to the allege[d] incident that occurred on August 24, 2016. Place back at a Comm[.] Base Facility. Punitive damages $10,000. And lost of wages from each defendent [(sic)]." (Doc. 10 at 11). Defendants filed an Answer and Special Report wherein they asserted that Plaintiff's claims are due to be dismissed because he failed to state a violation of a constitutional right. (Docs 26 and 27, generally). Plaintiff filed a Response to Defendants' Motion for

7

Summary Judgment on August 1, 2016, reasserting the grounds for his Complaint. (Doc. 38, generally).[3]

SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;

---

[3] Although Plaintiff's Amended Complaint is the only complaint being considered for purposes of the Motion for Summary Judgment (*see* FN 1), Plaintiff's Response (Doc. 38) also states as follows: " I Plaintiff request to the Courts to [d]ismiss the [c]laims of Double Jeopardy, 8th Amendment, Retaliation, and the Equal Protection claim, also plaintiff requests to [d]ismiss suing [(sic)] [e]ach individual in their "Official Capacity" and sue [e]ach Defendant in their Individual Capacity […]"  (Doc. 38 at 18).

8

> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

Also, it is well settled that a conclusion cannot be taken as true, and the Court will not accept conclusory allegations as facts in consideration of a motion for summary judgment. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a

9

plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment).

## DISCUSSION

I. Violation of Due Process

In order to assert a Fourteenth Amendment due process claim, Plaintiff must have been deprived of "life, liberty, or property." U.S. Const. amend. XIV, § 1 (providing, in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law....").

> The Supreme Court has stated that there are two circumstances in which a prisoner can be deprived of a liberty interest beyond the deprivation associated with the prisoner's confinement. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L. Ed.2d 418 (1995). First, a liberty interest may arise from the "Due Process Clause of its own face," which extends procedural safeguards to a prisoner when his liberty is restrained in a way that exceeds the sentence imposed by the court. *Id*. Secondly, states may create liberty interests by conferring certain benefits to prisoners, the deprivation of which "impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

*Wallace v. Hamrick*, 229 Fed. Appx. 827, 829-30 (11th Cir. 2007)(unpublished). In the present action, Plaintiff has not claimed a loss of life or property; therefore, he must be claiming a loss of a liberty interest, which according to the disciplinary report in this case, was his loss of privileges (forty-five days loss of outside, canteen, telephone, and visitation privileges and a recommendation

10

for custody review).[4]  This Court has held, however, that there is no right inherent in the Constitution entitling a prisoner to privileges:

> [B]ased on a plain reading of the Constitution, the Court finds that there is no right inherent in the Constitution entitling a prisoner to privileges. *Accord Id.*[*Sandin*] (finding no right inherent in the Due Process Clause to be free from disciplinary segregation); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S. Ct. 274, 279 n.9, 50 L. Ed.2d 236 (1976) (finding that eligibility for rehabilitation programs is not a sufficient interest to invoke due process); *Meachum v. Fano*, 427 U.S. 215, 216, 224-25, 96 S. Ct. 2532, 2534, 2538, 49 L. Ed.2d 451 (1976) (finding the Due Process Clause itself does not protect a prisoner from being transferred to an institution with less favorable conditions); *Wolff* [*v. McDonnell*,] 418 U.S. [539] at 557, 94 S. Ct. [2963] at 2975 [(1974).](finding no right in the Constitution to receive good-time credits for satisfactory behavior).

*James v. Odom*, 2000 WL 1136563, *3 (S.D.Ala. 2000) (unpublished). Because Plaintiff's allegations do not concern a right inherent in the Constitution, in order to state a claim, he must show that the state has created a liberty interest that necessitates due process before his prison privileges can be restricted.  "'[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions

---

[4] Although not stated in Plaintiff's Amended Complaint, Plaintiff's Response to Defendants' Motion for Summary Judgment asserts that Plaintiff was additionally placed in segregation for twenty-eight days as a result of his violation.  (Doc. 38 at 14, 16-17).  This alleged deprivation is not indicated in the disciplinary report.  Nevertheless, to the extent that Plaintiff contends that his placement in segregation was the liberty entitling Plaintiff to due process, Plaintiff has still failed to state a claim. *See Sandin*, 515 US. at 487, 478(there is no right inherent in the Constitution to be free from confinement in disciplinary segregation.)

11

of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wallace*, 229 Fed. Appx. at 830 (*quoting Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), *quoting Sandin*, 515 U.S. at 484). In *James*, this Court held:

> [T]he restriction of privileges is a much less severe form of discipline than placement in disciplinary segregation. By virtue of being in prison, a prisoner's life is heavily restricted. . . . Therefore, the increased restriction of privileges is neither "atypical" nor a "significant hardship" under the *Sandin* analysis and is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence.

James, 2000 WL 1136563 at *5 (citations omitted) (plaintiff did not suffer a deprivation of a state-created liberty interest when, as a result of his disciplinary conviction, his store, phone, and visiting privileges were restricted for forty-five days). Plaintiff has not presented any facts showing a state created liberty interest requiring due process for the loss of prison privileges. As a result, Plaintiff has not stated a claim for a violation of a liberty interest requiring due process under the Fourteenth Amendment.[5]

---

[5] Because this Court has determined that Plaintiff failed to establish a violation of a constitutional right, it is unnecessary to address whether the Defendants have qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001)("If no constitutional right would have been

Nevertheless, even if Plaintiff established that he suffered a deprivation of a liberty interest, a constitutional violation would still not exist because Plaintiff was given due process. The procedural requirements for a disciplinary hearing are: (1) advance written notice; (2) a written statement of the evidence relied upon and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present evidence, when "do[ing] so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 563-66.

Plaintiff asserts that his due process rights were violated because he was subjected to the same disciplinary violation twice following a finding of not guilty which violated the Department of Corrections Administrative Regulation Number 403, sections C and D (Doc. 10 at 5-7; Doc. 38 at 4).[6] As an initial matter, Plaintiff has not presented any facts to show that he was sanctioned for the *same* disciplinary violation twice. Rather, even assuming

---

violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")
[6] To the extent that Plaintiff contends his due process rights were violated because the hearing officer lacked impartiality or because of an error in the disciplinary documents, Plaintiff's claim would still fail. First, because Plaintiff has not established a violation of a constitutional right requiring due process and, second, because even if he had, there was still sufficient evidence to support the hearing officer's findings. *See Superintendent, Massachusetts Corrrectional Institutions, Walpole v. Hill*, 472 U.S. 445, at 455-56, 105 S.Ct. 2768, at 2774 (1985).

that Plaintiff was initially found not guilty of a Rule 935 violation, the record reflects that the second charge (which was erroneously re-initiated for that same violation) was disapproved when the error was discovered. (Doc. 27-9 at 19). Further, it is undisputed that the re-initiated violation for which Plaintiff was ultimately found guilty, was for a Rule 503 violation, (not a Rule 935 violation for which he was previously found not guilty). As such, Plaintiff's not guilty finding was not overturned in violation of Rule 403(c)(as alleged by Plaintiff) and he was only punished for one violation (Rule 503). Moreover, it is undisputed that Plaintiff was given twenty-four hours advance written notice of each of the hearings. (Doc. 27-9 at 9, 20; Doc. 36-1 at 2-4). Plaintiff was permitted to attend the hearings, give testimony, and present evidence. (Id.) Plaintiff was allowed to (and did) prepare and present written questions to be asked of Defendants at the hearings. (Doc. 27-9 at 6-7, 10, 18, 22-30, 34). Lastly, Plaintiff was informed of the hearing officer's decision and given a copy of the signed final report, both on the re-initiated[7] Rule 935 and the initial Rule 503 violation, which listed the findings of fact, the decision of the

---

[7] There is no dispute that Plaintiff was not given the final report on the initial Rule 935 violation. (*See* Doc. 36 at 2; FN 2) However, the lack of a final report, when it is undisputed that Plaintiff was not punished for the initial 935 violation or for the re-initiation of that same violation, does not affect the analysis herein above.

hearing officer, the reasons for the disciplinary action taken, and the sanctions imposed (Doc. 27-9 at 19, 32). Based on the above, it is apparent that Plaintiff received due process in connection with his loss of privileges and summary judgment is due in favor of Defendants with regard to Plaintiff's Fourteenth Amendment claim.

II. Eighth Amendment and Equal Protection Claims[8]

Plaintiff asserts that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 10 at 5). The Eighth Amendment is violated only by "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In order to prevail on his Eighth Amendment claims, Plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (citations omitted), (2) the defendant's 'deliberate indifference' to that condition, *Wilson v. Seiter*, 501 U.S. 294 (1991) (citations omitted), and (3) causation, *Williams v. Bennett*, 689 F.2d 1370 (11th Cir. 1982) (citations omitted.)." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993).

---

[8] Unlike the other claims that Plaintiff requested be dismissed in his Response (Doc. 38), these claims were actually asserted in Plaintiff's Amended Complaint and were before this Court when the Special Report was filed. As such, this Court will briefly discuss these claims.

In the present action, Plaintiff has alleged no facts that would support a finding that his loss of privileges subjected him to a substantial risk of serious harm or denied him "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. Moreover, Plaintiff has alleged no facts that would support a finding that prison officials knew of and disregarded the purported excessive risk to his health or safety caused by his loss of privileges. *Id*. at 837. Thus, Defendants are entitled to summary judgment as to Plaintiff's Eighth Amendment claim.

In order for Plaintiff to state a valid claim under the Equal Protection clause, he must demonstrate that (1) "he is similarly situated with other prisoners who received" more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (*citing to Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932—33 (11th Cir.1986) (per curiam). In the present action, Plaintiff wholly failed to present any evidence that other prisoners were treated differently or that his allegedly discriminatory treatment was based on constitutionally protected interest.

As a result, Defendants are entitled to summary judgment as to Plaintiff's equal protection claim.

## Conclusion

Based on the above, the Court finds that Defendants are entitled to summary judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted and that this action be dismissed with prejudice.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c)(2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the

consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    DONE this 17th day of August, 2016.

                                      s/ BERT W. MILLING, JR
                                      UNITED STATES MAGISTRATE JUDGE